(36 South. 504.)

No. 14,781.

PALACIE v. GARDINER.

(April 11, 1904.)

STREETS—OBSTRUCTIONS—NEGLIGENCE.

1. The action is one sounding in damages for injuries suffered by the upsetting of a cart, which was driven against defendant's lumber stacked on the side of a street.

Plaintiff's contention is that there was no light on the stack of lumber, as required by a city ordinance.

It is not considered that the contention is sustained by the facts as made to appear by the testimony. This was the view of the district judge, who heard the witnesses, saw their manner of testifying, and propounded a number of questions to them.

A careful examination of the record does not warrant the conclusion that he has not correctly interpreted their testimony.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by Joseph Palacie against John H. Gardiner. Judgment for defendant, and plaintiff appeals. Affirmed.

The following is the sketch referred to in the opinion:

N. H. Nunez and Robert Emmet Hingle, for appellant. Ambrose Smith, for appellee.

BREAUX, C. J. Plaintiff claims damages in the sum of $4,100 for injuries he received in an accident on the 3d day of February,

1902. He is a dairyman, and sells milk in the lower part of the city. He delivered the milk every morning, before day, at about 5 o'clock. The morning on which he was hurt was quite dark. Passing on North Peters street in a cart, the cart struck a lumber stack on the revetment, or the four-foot space between the ditch on the river side of the street and the street.

Plaintiff's cart was upset, and in the fall he broke his arm, which caused him great pain for some months.

The pleadings present the usual issues in damage suits. Plaintiff alleges his injuries and the cause, and the defendant, denying, alleges he was not at fault.

Plaintiff was the first witness in his own behalf. He disagrees with his own admission of record and with the testimony of his witnesses when he states, as he does, that he met with the accident south of Andry street. Owing to the darkness, it was, we imagine, difficult for him to state precisely the place the cart struck the stack of lumber.

The admission of record shows that he was at the time delivering milk between Andry and the street above, to wit, Egania street. This is not in accord with his testimony that it was below Andry street. He testifies that he knew that they were constructing improvements on the river front, but that he did not know of the stacks of lumber, as they had been placed there the day previous.

One of the customers of plaintiff to whom he served milk on North Peters street, not far from where Egania intersects North Peters street, had cord wood on the front of his place near the foot of the steps leading up the levee from the road. The name of this man is Bahr.

The plaintiff's contention is that this cord wood was at some distance from the place of the accident, while, on the other hand, defendant's contention is that it was near the front of the house, and within a very few feet of the place where traces were found after daylight on the morning of the 3d of February, showing where the cart capsized. Plaintiff was riding on his cart in the direction of Canal street at the time.

There was no light on the cord wood. The contention of the defendant is that, as relates to the lumber stacks, there were a sufficient number of lights placed thereon. One of the witnesses for plaintiff states that he went to the place of the accident immediately after the collision, and found the milk cart upset; that there was lumber on each side of the street, but enough room for a cart to pass; that he saw no light on the lumber stacks; that the lumber of defendant projected further into the street than Bahr's cord wood, and that it (defendant's lumber) was the cause of the accident.

The young son of plaintiff was with him at the time. He testified for plaintiff. Four other witnesses have testified for plaintiff. They all agree, in the main, regarding the facts, except as to the place of the accident. Each witness traces it to a different place in the street.

It was of importance to fix the place, because defendant's lumber did not extend the whole length between Egania and Flood streets; and we have stated before there was cord wood which was also an incumbrance on the side of the street.

North Peters street strikes us as being a persistent sort of street. Witnesses for plaintiff and defendant, by their statements, agreed to bring it to a close at Egania street.

Subsequently, in the testimony, North Peters street is spoken of as a complete street south of Egania on to the Barracks. Although closed at Egania street, the name of South Peters was given to the earth road south of Egania, and it seems, after all, that the accident happened on South Peters street further on south than Egania.

We take up the testimony for defendant, and take up for consideration the statement of his first witness, who identified himself as

being the "loftman" on the pile driver of defendant. He discovered spilt milk on the ground in the road on the morning of the accident, which, he says, was near the cord wood of Bahr, and not immediately near the lumber of defendant.

There are steps leading from the street up to the top of the levee in front of Bahr's house, and it is near these steps that the wood was corded, which cord wood, as defendant's witness would have it, projected onto the street to a greater extent, at any rate, than defendant's lumber.

The lumber consists of large pieces—12' by 12'—measuring about 30 feet in length. It was stacked lengthwise along the ditch, so as not, the witness testifies, to obstruct the street.

This first witness for defendant, it seems, was satisfied that there were lights on the lumber, and stated that he always attended to the lamps so that they were in their proper places during the night. To quote from his testimony:

"The light was there before I made fire in the boiler, because I went and looked, and the lamp was returned to me by the man who came in the morning. He used to bring it at about 6 o'clock." The light in the lamp was not out on the morning of the accident when it was brought to this man.

Another witness, who stays at the "Water Cure," at the corner of Flood and North Peters streets, and who had seen plaintiff a few moments prior to the accident, while driving on the front on North Peters street, returned to the place of the accident after daylight, and saw where the milk had been spilt. He swore that the spot showing this spilt milk was near the steps in front of Bahr's house, about 10 feet from his corded wood; that this spot was also near defendant's lumber.

It should be borne in mind that defendant owned the lumber and that Bahr owned the cord wood.

This witness also testified that there was light on the stacks of lumber, but none on the cords of wood.

Defendant's foreman at the construction works in front of Egania street testified to about the same effect as the other witnesses for defendant. He said that they always tried to stack the lumber inside of the line of the cord wood on the street, and not to project on the street as far as the line of the wood extended on the street. This witness locates the milk stains to which we have before referred near the center of the street, between defendant's stack of lumber and Bahr's wood, and about 75 feet from the nearest of defendant's lights.

At least two of the witnesses for plaintiff did not testify as if absolutely certain that there was no light on the lumber. They only recalled that they had not seen any light. On the other hand, the witnesses for the defendant agree and stated that there was light. Again, it was not shown with reasonable certainty that the cause of the upsetting of the cart was defendant's lumber. There is some testimony going to show that the cord wood in front of the house where the plaintiff served milk to the man Bahr was the cause.

We have not found it possible to determine with required certainty where the cart was when it struck the obstacle.

In order to sustain plaintiff's contention, we should find enough testimony to uphold the conclusion that plaintiff met with the accident while passing defendant's lumber pile, and not while passing the cord wood.

The foreman of defendant also testified that there were sufficient lights on the lumber. He and those under him took them up every morning.

Hunterlang, a lad 15 years of age, testified that he saw the red light on the lumber while on his way in the morning selling bread. Other witnesses for defendant have testified in regard to the light and the place at which the lumber was relatively to the wood.

The bills showing the purchase of the

lamps, the orders of the employer in regard to the light, and the testimony of the defendant concur in showing that there were lights placed on the lumber at night.

The testimony shows that on the morning of the accident, after daylight, the lamps were brought to the custodian of the lamps, and that the lights were not out.

That there was "no light on the lumber" is the only specific charge brought by plaintiff against defendant.

Plaintiff was in the habit of passing on this street, and at this particular place. He must have seen the lumber stacked and the corded wood. He says that he did not see the stacks of lumber for the reason that they were hauled to the place only the day before the accident.

In this he is not borne out by the testimony. They (the stacks) had been there for some weeks prior to the accident, and he must have passed them a number of times, and must have seen them if he looked at all. He says, in substance, that he did look.

If we must take up the doctrine of probabilities in this case, it is as reasonable to conclude from that point of view that plaintiff ran up against the cord wood, where there was no light, as that he ran against the lumber, on which there was a light. We base our conclusion on the fact that there was a light on the stack of lumber, and that plaintiff has not made out his case. The onus of proof was with him.

We prepared a sketch, which we annexed, as it may somewhat serve to explain.

Plaintiff and his witnesses did not see these lights. Those for the defendant swore most positively that they did see them. Where a person asserts that he has seen an object, and another asserts that he did not see it, under circumstances such as those here, the affirmative is taken as proof.

The district judge propounded a number of questions and showed careful attention during the trial. This case presents no question of law; merely questions of fact. He, having heard all the evidence, having observed the manner of testifying by the witnesses, had an excellent opportunity to judge as to the facts.

A careful examination of the record warrants the conclusion that he has correctly interpreted the testimony, and we can think of no good reason to reverse his judgment.

It is therefore ordered, adjudged, and decreed that the judgment appealed from is affirmed.